The Honorable Jacqueline J. Roberts State Representative P.O. Box 2075 Pine Bluff, Arkansas 71613-2075
Dear Representative Roberts:
This is in response to your request for an opinion on the legality and constitutionality of a proposed ordinance of the City of Pine Bluff. Specifically, the ordinance deals with appointments to the City's civil service commission, and provides that in order to provide a method to insure that the civil service commission "represents the demographics of the City . . . each time a vacancy is created on the Pine Bluff Civil Service Commission, the person to be appointed to replace the Commissioner going off the Pine Bluff Civil Service commission will be of a different race than the Commissioner going off the Pine Bluff Civil Service Commission."
It is my opinion, for the reasons that follow, that the subject of the ordinance is not a "municipal affair" and the requirements of the ordinance would in all likelihood be found unconstitutional by a court faced with the question.
Subsection (a) of section 14-43-601 of the Arkansas Code, a portion of the so-called "Home Rule Act," defines "municipal affairs" as meaning "all matters and affairs of government germane to, affecting, or concerning the municipality or its government, except the following, which are state affairs and subject to the general laws of the State of Arkansas: . . . (F) Pension and civil service systems." Civil service systems are thus not a "municipal affair," but are rather a "state affair" subject to the general laws of the state. Subsection (a)(2) of the same statute, however, states that the municipality "may exercise any function or legislative power upon state affairs if not in conflict with state law." The qualifications of civil service board members in cities of the first class are established by statute (see A.C.A. §§ 14-50-202 and14-51-202). It does not appear that the addition of a race classification to these requirements would necessarily conflict with those established by statute, although it certainly imposes an additional requirement and may raise questions as to circumscribing the appointive authority of the executive branch, here granted by statute. See A.C.A. §§ 14-50-201 and14-51-201. Additionally, the Arkansas Supreme Court appears to have taken a strict view of a municipality's authority over "state affairs." SeeCity of Fort Smith v. Fort Smith Housing Authority, 256 Ark. 254,506 S.W.2d 534 (1974) (housing authority is not a municipal affair and city council cannot substitute its own method of filling vacancies which occur on the board).
In any event, it is my opinion that the proposed ordinance is in all likelihood constitutionally invalid under the Equal Protection Clause of the United States and Arkansas Constitutions. See U.S. Constitution,Fourteenth Amendment and Arkansas Constitution, art. 2, § 3. Because the classification in the ordinance is based upon race, a court would subject the ordinance to a "strict scrutiny" standard of review. The ordinance must, in order to be upheld, be narrowly tailored to achieve a compelling governmental interest. I have found no cases specifically addressing the constitutionality of race-based classifications as a criteria for determining eligibility for appointment to public boards. At least one other Attorney General, however, in a similar context, has applied the line of federal cases addressing race based quotas in affirmative action plans enacted to remedy past discrimination in public employment. See Op. Alaska Att'y Gen. 89-299 (finding constitutionality suspect a bill which would prohibit appointment or reappointment of a person to a board if the appointment would cause the number of persons of one gender to exceed by more than one the number or persons of the other gender on the board). In order for a municipality[1] to adopt such classifications, it must be shown that past discrimination has occurred on the particular board in the city at issue. See Richmond v. Croson Co., 488 U.S. 469 (1989). Statistical disparity alone is not enough to justify utilization of a suspect classification. Id. Proof of general societal discrimination is also insufficient. Wygant v. Jackson Board of Education, 476 U.S. 267
(1986).
It is unclear to me from the facts presented whether the requisite showing could be made in Pine Bluff. In any event, it is my opinion that the mechanism employed in the proposed ordinance to effectuate the objective is not narrowly tailored to accomplish its goals. Requiring the replacement of one outgoing commissioner with a commissioner of a different race will not further the goal of racial balance or demographic representation when not undertaken in light of the remaining composition of the board. The proposed ordinance could result in a board composed of entirely one race of members at any given time. See also generally Tenn. Op. Att'y Gen. 93-09 (finding constitutionally suspect race based classification for appointment to parole board); Peters v. Moses,613 F. Supp. 1328 (W.D. Va. 1985) (the reserving of two at-large school board positions for blacks is prohibited by equal protection since there was no finding of past discrimination and no other compelling objectives); and Uzzell v. Friday, 592 F. Supp. 1502 (M.D.N.C. 1984) (university requirement that student judicial body include eight minority members violated equal protection clause absent evidence of past discrimination, and classifications were not narrowly tailored).
It is therefore my opinion that the proposed ordinance would in all likelihood be found unconstitutional by a court faced with the question.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] A different rule attends classifications made by Congress.See Metro Broadcasting v. F.C.C., 497 U.S. 547 (1990).